## MARTIN COPELAND CO. v. PILOT ELECTRIC CO.

### SAME v. S. S. KRESGE CO.

Circuit Court of Appeals, Second Circuit.
April 1, 1929.

No. 260.

Worthington Campbell and Redding Greeley, O'Shea & Campbell, all of New York City, for appellant.

Asher Blum and Mock & Blum, all of New York City, for appellees.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM. The design is for a panel to cover the dial used in tuning a radio set, and represents a circular plate with a central opening for the condenser shaft, an opening at the top through which to read the dial, and a lower knob, or opening for a knob, to be used for a vernier to turn the shaft. The surface of the panel is represented as milled or cross-hatched, except at the periphery and around the openings. In practice the panels are made of Bakelite, and the evidence shows that in pressing this substance it is regarded by many as more convenient and better factory practice not to try to finish the surface smooth, but to leave a rough or hatched surface.

The earlier art disclosed a circular panel with a smooth surface throughout, an opening at the top through which to read the dial and a vernier knob at the bottom. This was made by the Amrad Company. It was also shown to have been customary upon the surface of Bakelite panels to use a milled or cross-hatched finish. No panel for a radio dial was proved to have been so finished, but the method had been used on ammeter cases, voltmeters and similar covers. The milling in all these cases stopped short of the edges, which were smooth.

We cannot agree with the learned District Judge that the defendant's panel does not infringe, if the patent is valid at all, but we do not think that it is valid. Some parts are clearly functional, and cannot be considered as contributing to the design. We refer to the opening for reading the dial, to the central opening for the knob of the condenser shaft, and to the opening for the vernier knob. These were conditions imposed upon the inventor by the structural details of the dial which he meant to cover, and not æsthetic variations produced by him. There remained only the general outline and form of the panel and its surface finish.

While we should, of course, not assent to the notion that design might not rest in simplicity of outline and proportion, or that a circular panel though conforming to the shape of the dial, might not display æsthetic imagination, perhaps just because of its avoidance of ornament, the shape and proportion of the patent were completely disclosed in the Amrad dial, a more pleasing and expensive one than the design in suit. Nothing was left for invention, except mill-

ing or cross-hatching a part of the surface; the Amrad panel being smooth throughout.

It is disputed whether this was more than a convenience in shop practice. The defendant has been at pains to show that to make a smooth Bakelite surface is technically troublesome. The plaintiff denies it. We regard the issue as irrelevant in any case. Such surfacing was extremely common in the use of Bakelite for not very alien purposes, and we cannot think that its transference to this panel was an example of æsthetic invention. It was no more than a variant which might have occurred to any one, which represented rather convenience than taste, or in so far as it did involve a deliberate æsthetic choice, was not beyond the range of journeymen designers.

Decree affirmed for invalidity.